**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

UNITED STATES OF AMERICA,

CASE NO.: 2:18-cr-47

v.

MAKEDA ATKINSON,

      Defendant.

**ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Defendant Makeda Atkinson ("Mr. Atkinson") has been indicted on six felony counts related to the sale of drugs, including fentanyl, that allegedly resulted in the death of an individual identified as L.M. Before the Court are nine discovery motions by Mr. Atkinson, docs. 42, 43, 45, 46, 47, 48, 50, 51, and 52. Mr. Atkinson also filed a Motion to Determine Voluntariness of Statements under Jackson v. Denno, 378 U.S. 368 (1964), doc. 49, and a Motion to Dismiss Count Three of the Indictment, doc. 44. The Government filed a Motion for Reciprocal Discovery. Doc. 57.

The Court held a motions hearing on March 5, 2019. Doc. 76. During the hearing, the parties informed the Court that, as of the date of the hearing, all discovery issues had been resolved. Accordingly, the Court **DENIES as moot** Mr. Atkinson's discovery motions, docs. 42, 43, 45, 46, 47, 48, 50, 51, and 52, as well as the Government's Motion for Reciprocal Discovery, doc. 57. For the reasons that follow, I **GRANT** Mr. Atkinson's Motion to Determine Voluntariness of Statements, doc. 49, and **RECOMMEND** that the Court find that Mr. Atkinson's statements were voluntary. Additionally, I **RECOMMEND** the Court **DENY** Mr. Atkinson's Motion to Dismiss Count 3 of the Indictment, doc. 44.

**I.    Motion to Determine Voluntariness of Statements (Doc. 49)**

    **A.    Mr. Atkinson's Statements**

The grand jury indicted Mr. Atkinson for several offenses, including alleged drugs sales occurring from September 2017 through January 2018, and one particular transaction on December 28, 2017, that purportedly resulted in the death of L.M.  Doc. 21.  Mr. Atkinson was arrested and interrogated on September 23, 2018.[1]  Investigator Stephen Lowrey of the Glynn County Police Department testified that Mr. Atkinson was arrested at 8:25 p.m. and transported from the scene of the arrest to the Glynn County Police Department headquarters at 9:45 p.m. Investigator Lowrey and Special Agent John Wood of the Federal Bureau of Investigation interrogated Mr. Atkinson at the Glynn County Police Department Headquarters for approximately two-and-a-half hours, between roughly 10:00 p.m. and 1:00 a.m.  The interrogation included, among other things, questions about Mr. Atkinson's involvement in the December 28, 2017 drug transaction.  Mr. Atkinson filed a motion in accordance with Jackson v. Denno, 378 U.S. 368 (1964), seeking a determination as to the voluntariness of the statements he made during the September 23, 2018 interrogation.

The Government provided video footage of the September 23, 2018 interrogation to the Court prior to the March 5, 2019 motions hearing, and this footage was admitted into evidence during the hearing.  Doc. 76.  No party disputes the video's accuracy or completeness. Investigator Lowrey testified regarding the interrogation at the March 5, 2019 hearing and stated that, although Mr. Atkinson admitted to being a drug user, he appeared sober and coherent at the time of his interrogation.  He also stated that the interrogation began just under two hours after

---

[1]    Other than the limited facts discussed later in this Report, the full circumstances of Mr. Atkinson's arrest have not been presented to the Court.

Mr. Atkinson's arrest and approximately 30 minutes after Mr. Atkinson was removed from the scene of his arrest.

The video footage provided by the Government shows the interrogation took place in what appears to be a small room with a table, three chairs, and no windows. The footage begins with a time stamp of "09/23/2018 22:00:41."[2] At the start of the video, Mr. Atkinson is seated alone at the table in the interrogation room. Mr. Atkinson remains alone in the room for approximately 20 minutes, aside from a police officer entering the room once and providing Mr. Atkinson with a beverage. At time stamp 22:22:42, Investigator Lowrey and Agent Wood entered the room. Investigator Lowrey then read Mr. Atkinson his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), and Mr. Atkinson executed a waiver acknowledging that he was aware of those rights. Doc. 68 at 22:23:30. Investigator Lowrey and Agent Wood proceeded to question Mr. Atkinson about various topics, including his current and past participation in drug sales and distribution, potential evidence, the December 28, 2017 drug transaction, and L.M. Id. Aside from a few short breaks, the questioning continued for approximately two-and-a-half hours, until 00:54:07. Id. Throughout the interrogation, Investigator Lowrey and Agent Wood encouraged Mr. Atkinson to be honest but did not promise Mr. Atkinson anything in return for his cooperation. See, e.g., id. at 22:39:30–22:40:40. Although Investigator Lowrey and Agent Wood conducted most of the interrogation, at one point, Sergeant Gregory of the Glynn County Police Department entered the room and questioned Mr. Atkinson regarding drugs found in his vehicle during his arrest. Id. at 00:26:46. Sergeant Gregory mentioned that some drugs were found in the possession of Mr. Atkinson's girlfriend (who was with Mr. Atkinson at the time of his arrest). Id. at 00:27:02. Mr. Atkinson stated all narcotics confiscated during the

---

[2] All references in this Report to events in the video are to the time stamp visible in the video footage admitted as Exhibit 1 during the March 5, 2019 hearing. Doc. 68.

arrest were his. Id. at 00:27:30–00:28:30. At no point during this exchange did Sergeant Gregory promise more lenient treatment to Mr. Atkinson or his girlfriend in return for Mr. Atkinson's cooperation. Near the end of the interrogation, Mr. Atkinson was visibly tired, asked for a sheet or blanket, and briefly laid on the floor, appearing to fall asleep. Id. at 00:54:20. No questioning occurs after Mr. Atkinson asked for a sheet or blanket, and the video footage concludes shortly thereafter.

### B. Legal Standard

The United States Supreme Court's holding in Jackson v. Denno, 378 U.S. 368 (1964), governs the voluntariness of confessions and, in pertinent part, provides:

> It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, and even though there is ample evidence aside from the confession to support the conviction.

378 U.S. at 376 (internal citation omitted). A confession is not voluntary pursuant to the Due Process Clause when law enforcement officials have used coercive conduct. Colorado v. Connelly, 479 U.S. 157, 167 (1986). Coercion can be mental or physical. Blackburn v. Alabama, 361 U.S. 199, 206 (1960); Chambers v. Florida, 309 U.S. 227, 237 (1940). The test for determining if a confession is the result of coercion requires a review of the totality of the circumstances. Blackburn, 361 U.S. at 206 (citing Fikes v. Alabama, 352 U.S. 191, 197 (1957)). In examining the totality of the circumstances, it must be determined whether "the statement is the product of the accused's free and rational choice." Harris v. Dugger, 874 F.2d 756, 761 (11th Cir. 1989). These potential circumstances include not only the crucial element of police coercion, but the length of the interrogation, its location, and its continuity, and the defendant's maturity, education, physical condition, and mental health. These circumstances

also include the failure of police to advise the defendant of his rights to remain silent and to have counsel present during custodial interrogation.  Withrow v. Williams, 507 U.S. 680, 693–94 (1993) (internal citations omitted).  "Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession."  United States v. Thompson, 422 F.3d 1285, 1295–96 (11th Cir. 2005).  Government coercion is a necessary predicate to a finding of involuntariness under the Fifth Amendment.  However, "[a]bsent police conduct causally related to the confession, there is no basis for concluding that any state actor has deprived a criminal defendant of due process of law."  Id. at 1296.

**C.     Mr. Atkinson's Statements Were Voluntary**

Considering the testimony and argument presented at the March 5, 2019 hearing and the video footage of Mr. Atkinson's September 23, 2018 interrogation, I find that Mr. Atkinson's statements were voluntarily made.  Several facts support this conclusion.

Mr. Atkinson stated during the interrogation that he was 44 years old at the time and had completed the tenth grade.  Doc. 68 at 22:23:01–22 :23:50.  Based on Mr. Atkinson's appearance at the March 5, 2019 hearing and in the video footage of the September 23, 2018 interrogation, he appears at all relevant times to be in relatively good physical health and does not demonstrate any mental infirmity or diminished mental capacity.  From the video footage of the interrogation, it is clear that Mr. Atkinson had no difficulty understanding or speaking the English language.  During the interrogation, Mr. Atkinson was expressive, articulate, and fully able to understand and discuss difficult or complex concepts.

At the outset of the September 23, 2018 interrogation, Mr. Atkinson was notified of his rights and executed a waiver acknowledging his awareness of those rights.  The notice and

waiver occurred reasonably soon after Mr. Atkinson's arrest. Mr. Atkinson was interrogated by no more than two officers at a time for approximately two-and-a-half hours. While the interrogation was long, it was not exhaustingly long. Moreover, Mr. Atkinson was alert, responsive, coherent, and attentive throughout the interrogation. Although he was periodically left alone during his interrogation, these periods were short in duration. The interrogating officers encouraged Mr. Atkinson to be honest but never promised him more lenient treatment in response for his cooperation. During the interrogation, law enforcement officers emphasized the seriousness of the situation and the possibility of criminal charges and a lengthy prison sentence, but the information is not conveyed in a threatening or coercive manner. Overall, the tone throughout the interrogation was conversational. The video footage demonstrates that the law enforcement officers did not speak to Mr. Atkinson in loud or raised voices at any time. While the location and circumstances of the interview were likely somewhat intimidating to Mr. Atkinson, the location and circumstances were not unusual or threatening and certainly were not coercive in any way that would render Mr. Atkinson's statements involuntary.

Furthermore, the video footage does not contain any indication that Mr. Atkinson was physically threatened or restrained at any time during the interrogation, and none was suggested at the March 5, 2019 hearing. The footage does not show that Mr. Atkinson ever requested counsel, a telephone call, a break in questioning, food, water, or to use the restroom.[3] The footage does not reflect that Mr. Atkinson was in any distress during the interrogation, and, in fact, he appears calm and comfortable throughout the interrogation. Near the end of the interrogation, Mr. Atkinson asks for a blanket or sheet, but there is no evidence that police continued questioning him after he made this request, and the footage terminates shortly

---

[3] Mr. Atkinson asked for a cigarette once at time stamp 00:30:00. It is not clear from the footage if he was provided a cigarette, but at no point during the footage does he smoke or leave the room.

thereafter. Doc. 68 at 00:54:20. At no point during the interrogation did Mr. Atkinson express that he was in any physical discomfort, aside from asking for a blanket or sheet at the end of the interrogation.

In sum, the evidence demonstrates that Mr. Atkinson willingly and voluntarily communicated with the interrogating law enforcement officers at all times during the interrogation, and there is no indication that any of Mr. Atkinson's statements during the interrogation were the product of coercion or undue influence. Indeed, Mr. Atkinson even reiterates his willingness to talk and cooperate with law enforcement near the conclusion of the questioning. Id. at 00:23:30.

Accordingly, I **GRANT** Mr. Atkinson's Motion to Determine Voluntariness of Statements, doc. 49, and **RECOMMEND** the Court find Mr. Atkinson's statements made during the September 23, 2018 interrogation were voluntary.

## II.     Motion to Dismiss Count Three of the Indictment (Doc. 44)

Count three of the indictment charges Mr. Atkinson with distribution of a controlled substance (hydromorphone and fentanyl) resulting in death of L.M., in violation of 21 U.S.C. §§ 841(a)(1) and(b)(1)(C). Specifically, in that count the Government alleges Mr. Atkinson "did knowingly and intentionally distribute a controlled substance, to wit, a mixture and substance containing a detectable amount of hydromorphone and a mixture and substance containing a detectable amount of fentanyl, both Schedule II controlled substances, and death resulted from the use of the fentanyl by L.M." Doc. 21 at 4.

Mr. Atkinson moves the Court to dismiss count three because it does not expressly allege that the fentanyl purportedly distributed by Mr. Atkinson was the but-for cause of L.M.'s death, which Mr. Atkinson argues is required where the Government seeks a sentencing enhancement

under § 841(b)(1)(C).[4] Doc. 44. In other words, Mr., Atkinson argues that the allegation in the indictment that "death resulted from the use of the fentanyl" is insufficient to support the sentencing enhancement, and that the indictment must allege more. Notably, the plain language of § 841(b)(1)(C) states that the sentencing enhancement in that section must be imposed if death "results from" the use of certain controlled substances—language that is essentially identical to the language in the indictment in this case.

Mr. Atkinson's motion to dismiss is based on the United States Supreme Court's decision in <u>Burrage v. United States,</u> 571 U.S. 204 (2014). Doc. 44. In <u>Burrage</u>, the prosecution sought a penalty enhancement under § 841(b)(1)(C), alleging that the defendant distributed heroin and death "result[ed] from" use of that heroin. Medical experts agreed that the victim's death was the result of "mixed drug intoxication" (sometimes called "mixed toxicity"). <u>Burrage</u>, 571 U.S. at 207–08. The evidence indicated multiple drugs the victim had acquired from different sources—heroin, oxycodone, alprazolam, clonazepam, and codeine—contributed to the victim's death, but no expert could state whether the victim would have lived had he not taken heroin that he received from the defendant. <u>Id.</u> The trial court gave a jury instruction stating the prosecution was required to prove that the heroin sold by defendant was a "contributing cause" of the victim's death. <u>Id.</u> at 208.

The Supreme Court considered whether the trial court's instruction was correct, given that the sentencing enhancement in § 841(b)(1)(C) can only be imposed where death "results from" use of drugs distributed by the defendant. The Court examined the term "results from" in the statute and determined that the trial court's jury instruction was contrary to the ordinary

---

[4] Section 841(b)(1)(C) establishes, among other things, that in certain circumstances where "death or serious bodily injury results from" use of drugs distributed by a defendant, the defendant shall be sentenced to a mandatory minimum term of imprisonment of 20 years or, if that defendant has been previously convicted of a felony drug offense, life imprisonment.

8

meaning of the statute. Id. at 216–17. The Court held that the ordinary meaning of "results from" is but-for causation, and, therefore, a defendant cannot be convicted under § 841(b)(1)(C) unless the jury finds that the drug distribution was "a but-for cause of the death or injury."[5] Id. at 218–19.

Mr. Atkinson argues that Burrage renders invalid an indictment that asserts a § 841(b)(1)(C) penalty enhancement, if the indictment uses only the statutory "results from" language and does not specifically allege but-for causation. Doc. 44. The Government argues in response that it need only charge the statutory language in the indictment. Doc. 56 at 12–13. After considering the parties' argument and the relevant authority, I would conclude that an indictment that charges the "results from" statutory language (or some close variant of it) suffices to seek a § 841(b)(1)(C) penalty enhancement, and but-for causation need not be expressly alleged.

In Burrage, the Supreme Court determined that the "ordinary meaning" of "results from" in § 841(b)(1)(C) is but-for causation. The jury instruction in that case incorrectly stated that the penalty enhancement could be imposed where the use of drugs supplied by a defendant was a mere "contributing cause" of the victim's death. In other words, the Supreme Court concluded the jury instruction was wrong because it incorrectly allowed the jury to impose the penalty enhancement where the drug use was *only* a contributing cause—a lower standard of causation— as opposed to the higher standard of but-for causation, mandated by the ordinary meaning of the statute.

Contrary to Mr. Atkinson's argument, Burrage does not require that an indictment contain language instructing the jury on but-for causation or suggest that an indictment lacking

---

[5] In Burrage, the Court confirmed that the "death results" enhancement of § 841(b)(1)(C) "is an element that must be submitted to the jury and found beyond a reasonable doubt." Id. at 210.

9

such an instruction is invalid. First, Burrage only addressed the propriety of a jury instruction; it did not discuss what language might be required in an indictment. Id. at 208. More importantly, Burrage held that a jury charge that expressly instructs the jury on a lower standard of causation (i.e., "contributing cause") is erroneous but did not go so far as to conclude that a jury charge *must* include express instructions on but-for causation. Indeed, the Court in Burrage said nothing about the sufficiency of a jury charge that contained only the statutory "results from" language, without more.

The Eleventh Circuit Court of Appeals has not addressed whether a jury instruction containing only the statutory "results from" language, without more, is sufficient under Burrage. Other circuits have and have concluded that such an instruction is sufficient to support a conviction. See United States v. Alvarado, 816 F.3d 242, 250 (4th Cir. 2016) (holding a jury instruction utilizing only the statutory language of § 841(b)(1)(C) was permissible, even where the jury requested clarification on the type of causation the statute required, and none was provided); Hancock v. United States, No.16-6504, 2018 WL 1666119 at *2 (6th Cir. Jan. 5, 2018) (holding that a prisoner convicted under § 841(b)(1)(C) could not challenge his conviction under 28 U.S.C. § 2255 because the trial court's jury instructions tracking the statutory language "were consistent with Burrage"), *cert. denied*, 139 S. Ct. 198 (2018); Atkins v. Stancil, 744 F. App'x 902, 902–03 (5th Cir. 2018) (holding that a charge utilizing the statutory language was sufficient when "the only evidence of causation was that the victim died from [the charged substance]").[6] Thus, ample persuasive authority supports the conclusion that a jury charge

---

[6] In another case, the Fifth Circuit Court of Appeals expressed some doubt about the validity of a conviction under § 841(b)(1)(C) where—in a mixed-toxicity case—the indictment and jury charge contained only the statute "results from" language. Santillana v. Upton, 846 F.3d 779, 785 (5th Cir. 2017) (reviewing trial court's dismissal of a 28 U.S.C. § 2241 petition seeking review of a conviction under § 841(b)(1)(C)). Specifically, the indictment in Santillana alleged the victim's use of drugs

containing only the "results from" language is sufficient, and the undersigned is unaware of any contrary authority.

There is also no authority extending this reasoning, as Mr. Atkinson does in his Motion, to require that an indictment allege but-for causation. Rather, precedent indicates "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself," so long as that language is not ambiguous. Hamling v. United States, 418 U.S. 87, 117 (1974). The Eleventh Circuit has held an indictment is sufficient if it, among other requirements, "presents the essential elements of the charged offense". United States v. Steele, 178 F.3d 1230,1233 (11th Cir. 1999) (citations omitted). Additionally, in another context, the Eleventh Circuit has considered a defendant's argument that his indictment for armed robbery, drafted from statutory language, was deficient "because it did not expressly state that the crime was committed 'knowingly.'" United States v. Woodruff, 296 F.3d 1041, 1046–47 (11th Cir. 2002). The Eleventh Circuit held that, although knowledge was an essential element of the charged offense, the statutory language alleging defendant "did unlawfully take and obtain personal property . . . by means of actual and threatened force, violence, and fear of imminent injury" implied an element of knowledge, and, therefore presented the essential elements of the offenses, notified the accused of the charges to defend against, and enabled the defendant to rely on a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution

---

supplied by defendant "resulted in" the victim's death, and the trial court charged the jury that it must find that the victim's death "resulted from" use of drugs supplied by the defendant in order to impose the sentencing enhancement. Id. The Fifth Circuit held that it could not determine, based on the record and applying Burrage, if the jury had found that the drugs supplied by the defendant were the but-for cause of death, and, therefore, could not determine if the defendant was convicted of a nonexistent offense. Id. Santillana is distinguishable for several reasons, but must importantly, because the court was considering the propriety of an indictment and jury instruction after trial and conviction where there was ample evidence of mixed toxicity. Here, Mr. Atkinson challenges only the sufficiency of the indictment (as there has been no jury instruction), and there is nothing before the Court at this time that suggests this is a mixed-toxicity case.

for the same offense. Id. at 1047–49. Thus, the Eleventh Circuit found that indictment to be facially sufficient. Similarly, Burrage held that the death results enhancement of § 841(b)(1)(C) was an essential element of the offense but also noted that ordinary meaning, history, and common usage required the language "resulting from" to be interpreted as requiring but-for causation. 571 U.S. at 211–15. Like the language of the indictment in Woodruff, the language of the indictment in this case tracks the language of § 841(b)(1)(C), necessarily implies the element of but-for causation, and consequently performs all of the essential functions of an indictment such that it is facially sufficient. I would, therefore, conclude that the indictment in this case adequately pleads the sentencing enhancement of § 841(b)(1)(C).[7]

Accordingly, Mr. Atkinson was properly charged in the indictment, and I **RECOMMEND** the Court **DENY** Mr. Atkinson's Motion to Dismiss Count Three of the Indictment, doc. 44.

## CONCLUSION

Based on the foregoing reasons, the Court **DENIES as moot** Mr. Atkinson's discovery motions, docs. 42, 43, 45, 46, 47, 48, 50, 51, and 52, and the Government's Motion for Reciprocal Discovery, doc. 57. I **GRANT** Mr. Atkinson's Motion to Determine Voluntariness of Statements, doc. 49, and **RECOMMEND** the Court find that Mr. Atkinson's statements were voluntary and **DENY** Mr. Atkinson's Motion to Dismiss Count 3 of the Indictment, doc. 44.

---

[7] During oral argument in this case, the Government agreed with Mr. Atkinson that an appropriate jury instruction under § 841(b)(1)(C) would instruct the jury on but-for causation. While such an instruction might be appropriate, and perhaps even preferable in a mixed-toxicity case, it is not required by Burrage. Alvarado, 816 F.3d at 250. As noted, there is nothing before the Court at this time indicating this is a mixed toxicity case. To the extent there is some evidence of mixed toxicity, the Court may consider whether a jury charge seeking more detailed instruction on but-for causation is appropriate. See, e.g., Santillana, 846 F.3d at 785.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 7 days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 27th day of March, 2019.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA